J-S17045-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

IN RE: ADOPTION OF P.J., MINOR CHILD :    IN THE SUPERIOR COURT OF
:          PENNSYLVANIA
:
:
APPEAL OF: D.A., FATHER       :       No. 1949 WDA 2014

Appeal from the Order October 29, 2014
In the Court of Common Pleas of Washington County
Orphans' Court at No(s): 63-14-226

BEFORE: GANTMAN, P. J., SHOGAN, J., AND FITZGERALD, J.*

MEMORANDUM BY GANTMAN, P.J.:          **FILED APRIL 1, 2015**

Appellant, D.A. ("Father"), appeals from the order entered in the Washington County Court of Common Pleas, which involuntarily terminated his parental rights to his minor child, P.J. ("Child"). We affirm.

In its opinion, the trial court fully set forth the relevant facts of this case. Therefore, we have no reason to restate them. Procedurally, Child was adjudicated dependent on June 19, 2012. On February 21, 2014, Washington County Children and Youth Services ("CYS") filed a petition for involuntary termination of Father's parental rights to Child.[1] The court held a hearing on the petition on September 5, 2014. On October 29, 2014, the court entered an order involuntarily terminating Father's parental rights to Child. Father filed a timely notice of appeal on November 26, 2014, along

---

[1] The petition also sought to terminate the parental rights of M.R. ("Mother"), who is not a party to this appeal. Following a hearing, the court terminated Mother's parental rights by a separate order filed on July 22, 2014.

---

*Former Justice specially assigned to the Superior Court.

with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i).

Father raises the following issues for our review:

WHETHER THE TRIAL COURT ERRED IN TERMINATING [FATHER'S] PARENTAL RIGHTS PURSUANT TO SECTIONS 2511(a)(1) and (2) OF THE ADOPTION ACT.

WHETHER THE TRIAL COURT ERRED IN FINDING THAT THE TERMINATION OF [FATHER'S] PARENTAL RIGHTS SERVED THE CHILD'S NEEDS AND WELFARE UNDER SECTION 2511(b) OF THE ADOPTION ACT.

(Father's Brief at 5).

The standard and scope of review applicable in termination of parental rights cases are as follows:

When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that it would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by [the] finder of fact. The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.

The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction,

without hesitation, of the truth of the precise facts in issue. We may uphold a termination decision if any proper basis exists for the result reached. If the trial court's findings are supported by competent evidence, we must affirm the court's decision, even though the record could support an opposite result.

*In re Adoption of K.J.*, 936 A.2d 1128, 1131-32 (Pa.Super. 2007), *appeal denied*, 597 Pa. 718, 951 A.2d 1165 (2008) (internal citations omitted).

CYS sought the involuntary termination of Father's parental rights on the following grounds:

**§ 2511.  Grounds for involuntary termination**

**(a)  General Rule.—**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

**(b)  Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the

- 3 -

> basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1)-(2), (b).  "Parental rights may be involuntarily terminated where any one subsection of Section 2511(a) is satisfied, along with consideration of the subsection 2511(b) provisions."  *In re Z.P.*, 994 A.2d 1108, 1117 (Pa.Super. 2010).

Under Section 2511(b), the court must consider whether termination will best serve the child's needs and welfare.  *In re C.P.*, 901 A.2d 516 (Pa.Super. 2006).  "Intangibles such as love, comfort, security, and stability are involved when inquiring about the needs and welfare of the child."  *Id.* at 520.  "In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship."  *In re Z.P., supra* at 1121.

> When conducting a bonding analysis, the court is not required to use expert testimony.  Social workers and caseworkers can offer evaluations as well.  Additionally, Section 2511(b) does not require a formal bonding evaluation.

*Id.*  (internal citations omitted).

"The statute permitting the termination of parental rights outlines certain irreducible minimum requirements of care that parents must provide

for their children, and a parent who cannot or will not meet the requirements within a reasonable time following intervention by the state, may properly be considered unfit and may properly have his…rights terminated." *In re B.L.L.*, 787 A.2d 1007, 1013 (Pa.Super. 2001).

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance.
>
> This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.
>
> Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.
>
> Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his…ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with [the child's] physical and emotional needs.
>
> Where a parent is incarcerated, the fact of incarceration does not, in itself, provide grounds for the termination of parental rights. However, a parent's responsibilities are

> not tolled during incarceration. The focus is on whether the parent utilized resources available while in prison to maintain a relationship with his...child. An incarcerated parent is expected to utilize all available resources to foster a continuing close relationship with his...children.

*In re B.,N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004), *appeal denied*, 582 Pa. 718, 872 A.2d 1200 (2005) (internal citations and quotation marks omitted). "[A] parent's basic constitutional right to the custody and rearing of his...child is converted, upon the failure to fulfill his...parental duties, to the child's right to have proper parenting and fulfillment of his...potential in a permanent, healthy, safe environment." *Id.* at 856.

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Katherine B. Emery, we conclude Father's issues merit no relief. The trial court opinion comprehensively discusses and properly disposes of the questions presented. (*See* Trial Court Opinion, filed 12/17/14, at 5-8) (finding: Father never provided primary or even occasional parental care to Child; Father has been incarcerated for most of Child's life; Father was briefly out of jail in August 2013, and visit was arranged, but Father did not appear; Father sporadically participated in juvenile dependency hearings via telephone or video conferencing; Father routinely violated his parole, resulting in numerous penalties; Father failed to make significant efforts to treat his drug and alcohol addictions; Father completed one parenting course and several drug treatment programs but did not complete mental health

treatment and evaluation or anger management programs; while incarcerated, Father saw Child only once, after petition for termination of parental rights had already been filed; Father was released from jail in August 2014; Father testified he is not ready to assume custody of Child but instead would like Child to live with Father's parents for initial period of six months; Child's foster family is attentive to needs of Child, and Child has progressed significantly in foster home; Child is very close with sister, who also resides in foster home; Child demonstrates no particular attachment to Father outside of their visits; Child would experience little to no negative effect from severance of parental relationship; since his release from prison, Father has had no steady source of legitimate income; Father failed to make significant efforts to achieve financial and personal stability; CYS proved by clear and convincing evidence that Father's instability and continued involvement in use and/or sale of illegal drugs has caused Child to be without essential parental care, control, and subsistence necessary for Child's physical or mental well-being; evidence is clear and convincing that Father cannot or will not remedy conditions that led to termination of his parental rights, and termination will best serve Child's needs and welfare). Accordingly, we affirm on the basis of the trial court opinion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/1/2015

Copies: Joyce Hatfield-Wise, Esq.; Tamora Reese, Esq.; MariAnn Hathaway, Esq.

IN THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY, PENNSYLVANIA

ORPHANS' COURT DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| ADOPTION OF: | ) | |
| | ) | |
| P.J., | ) | NO. 63-14-226 |
| | ) | |
| (minor child) | ) | |

Emery, J.                                                December 17, 2014

## OPINION PURSUANT TO PA. R.A.P. 1925 (a)

This case came before the Court on a Petition for the Involuntary Termination of Parental Rights filed by Washington County Children and Youth Social Services Agency (CYS). The petition, filed on February 21, 2014, sought to terminate the parental rights of D.A. ("Father"), natural father to the child, P.J. After several continuances, the hearing was held on September 5, 2014. The Father was present and represented by counsel. The child was represented by a Guardian ad Litem appointed by the Court. Suggested Findings of Fact and Conclusions of Law were submitted to the Court on behalf of CYS and the Father; the Guardian ad Litem submitted a written position statement. The Court granted the Petition on October 29, 2014 and terminated the Father's rights to P.J. This timely appeal ensued.

## I.    FACTS

Father is the biological father of P.J., who was born on January 11, 2006, age 8. The biological mother is M. R., whose parental rights were terminated on July 22, 2014. The child was first adjudicated dependent on November 13, 2007; she was placed in foster

1

care from September 9, 2007 until March 3, 2009, when she was returned to the home of her mother. (Exhibit 1 Orders of November 13, 2007 and March 3, 2009; T.T. p. 7) The Father was incarcerated during the eighteen month period of placement. (Exhibit 1; Order of March 3, 2009; T.T. p. 8) The case was subsequently closed. CYS again became involved with the family in 2012. The child was placed in emergency shelter care on May 7, 2012 when the Pennsylvania State of Police took protective custody of the child after the police arrested the Mother and her husband for domestic violence and Mother tested positive for cocaine. (Exhibit 1 - Court Order May 7, 2012). The child was adjudicated dependent on June 19, 2012 and has remained in foster care since. At the time of the shelter hearing, the Father was incarcerated. (Exhibit 1 – Court Order May 7, 2012). Since the child's placement in May of 2012, Father has been out of jail only for a few months.

Father's criminal history centers on drugs; the Father has multiple convictions for misdemeanor drug charges and one felony for the sale of cocaine and a felony escape conviction for failure to return to a halfway house. (T.T. pp. 32-41; Exhibit 3) Father has lacked compliance with his parole, resulting in numerous parole violation penalties. Father did not visit with the child from the date of placement in May of 2012 until July 27, 2014, when a visit occurred at the Allegheny County Jail. (T.T. p. 27) He was briefly out of jail in August of 2013 and a visit was arranged but he did not appear. (T.T. pp. 9, 49) The Father sporadically participated in the juvenile dependency hearings via telephone or video conferencing. (Exhibit 1) The Father was ordered by Juvenile Court, upon his release, to complete a drug and alcohol evaluation and follow through with treatment, to begin visits with his daughter and to obtain appropriate housing. (Exhibit 1; Court Orders June 19, 2012; October 15, 2013). Father was also ordered to complete parenting classes and anger management. The Father did complete a

2

parenting program entitled Inside Out Dad Parenting Program while in the Allegheny County Jail. (Exhibit A; T.T. p. 58) Father has participated in numerous drug treatment programs; he has not completed mental health treatment and evaluation and anger management. (T.T. pp. 15, 58) The Father was released from jail in August of 2014. He has had supervised visitation with the child since then.

The child is in the third grade. She has exhibited significant behavioral problems and mental health issues in the past. She currently is receiving mental health treatment including mobile therapy, case management and counseling and school support, including wrap around services of a TSS Worker. (T.T. pp. 14, 110) She was placed in her current home in February 2014; it was the sixth placement since she was removed from her mother's care in May of 2012. (T.T. p. 96) Her behaviors have improved while in this home. Her sister A.K., age seven, is also placed in this home. P.J. and her sister have a positive and close relationship. (T.T. p. 13) The foster parents desire to adopt both P.J. and A.K. (T.T. p. 14)

## II. STANDARD OF REVIEW

In order to grant the Petition for Involuntary Termination of Parental Rights, the Court must find that the moving party provides a clear and convincing evidence of one of the grounds enumerated in the petition. In re: J.D.W.M., 810 A.2d 688 (Pa. Super. 2002). The clear and convincing evidence standard means testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. Id.; In Re: Julissa O., 746 A.2d 1137 (Pa. Super. 2002). The petition alleged that the Father's rights should be terminated pursuant to sections 1 and 2 of §2511 of the Adoption Act enumerated as follows:

3

(1)     A parent, by conduct continued for a period of at least six months immediately preceding the filing of the petition, either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2)     The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well being, and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa. C.S.A. 2511 (a) (1) and (2)

The Court's examination is a two part test. The Court must determine if CYS has established by clear and convincing evidence if the Father's conduct satisfies any of the grounds delineated in §2511 (a) (1) and (2). If so, then the Court must determine, pursuant to §2511 (b) that the termination of the parental rights will best serve the needs and welfare of the child.

## III.     ISSUES ON APPEAL

The Appellant asserts in his Statements of Matters Complained of on Appeal that "the trial court committed an error of law and/or abuse of discretion. . . in terminating Natural Father's rights to his minor child pursuant to Section 2511(a)(1)(2)(5) and (8) of the Adoption and in finding the termination of the Natural Father's parental rights to his minor child best served the child's needs and welfare under Section 2511(b) of the Adoption Act." (Record No.    ) The Court will first note that the Petition seeks to terminate Appellant's rights pursuant to Section (1) and (2) and NOT (5) and (8) as claimed in the Concise Statement. As the issues on appeal asserted by the Appellant are general in nature, the Court sets forth its Rationale for

4

the decision as a full and complete response to the Appellant's Statement of Matters Complained of on Appeal.

## IV. RATIONALE

The Father has been incarcerated throughout most of the child's life. It is well settled that incarceration, in of itself, is not grounds for termination; however, the duties and responsibilities of a parent are not tolled during incarceration. In re: J.I.R, 808 A.2d 934 (Pa. Super. 2002). An incarcerated father is expected to utilize all resources available to him to maintain a relationship with his child. In re: C.S., 761 A.2d 1197 (Pa. Super. 2000). Pursuant to §2511 (a) (2), the question before the Court is whether CYS has established by clear and convincing evidence that the repeated and continued incapacity, neglect or refusal of the Father has caused the child to be without essential parental care necessary for her well-being, and the conditions and causes of the neglect or refusal cannot or will not be remedied by the Father. The Father has never provided primary parental care to this child, nor has he provided even occasional parental care. The Father has been incarcerated for most of the child's life. Although he was out of prison at the time of the hearing, the Father stated that he is still not ready to assume custody of his daughter but rather wants her to be placed with his mother and he could have regular contact with her. (T.T. p. 51) The Father is not currently in a drug and alcohol treatment program. He has been in both in-patient, out-patient and prison-based treatment programs in the past but is not in a program at this time. Father was previously receiving Social Security Disability and is seeking to have it reinstated since his release from prison. The Father's instability, not having a residence and employment, throughout the child's life and the Father's continued involvement in the use and/or sale of illegal drugs has caused this child to be without her Father's care. Those conditions and causes have not yet been remedied and they are

5

not likely to be remedied in a reasonable period of time. The child has been in foster care for two and one-half years. As expressed by the Pennsylvania Supreme Court, there is no simple definition of parental duties. They have defined parental duty as follows: "Parenting duty is best understood in relation to the needs of a child. A child needs love, protection, guidance and support. These needs, physical and emotional, cannot be met by merely passive interest in the development of the child. . . parental obligation is a positive duty which requires affirmative performance;. . . parental duty requires that a parent "exert himself to take and maintain a place of importance in the child's life." In Re: Burns, 474 Pa. 615, 624, 379 A.2d 535, 540 (1977); In Re: B.,N.M., supra. The Father has simply not performed any parental duty except that he loves the child. But she needs and deserves more. CYS has met its burden of proof in proving §2511 (a) (2).

Pursuant to §2511 (a) (1), the question before the Court is whether CYS presented clear and convincing evidence that the Father, during the six month period prior to the filing of the petition on February 21, 2014, has failed to perform his parental duty or evidenced a settled purpose of relinquishing his parental rights. The Agency does not have to prove that Father has evidenced both failure to perform parental duties and evidence a settled purpose of relinquishing his rights; one of these grounds is sufficient. In Re: C.M.S., (1), 832 A.2d 457 (Pa. Super. 2003). Similar to the analysis set forth above, the Court finds that the Father has failed to perform his parental duties. During the six months prior to filing of the TPR Petition on February 21, 2014, the Father was incarcerated but did not request any visits at the jail. The Father did not request visitation until after the filing of the petition. While the Father attempted to send cards to the child, the letters were not received. The Father never petitioned the dependency court to insure that he could maintain contact. Father's explanation for his lack of involvement was that he

6

believed his mother was in contact with both CYS and the child's Mother and he was of the understanding that the child was going to be returned to her mother and that he did not need to do anything. In fact, his Mother was not visiting with the child. (T.T. p. 112) Being a parent requires affirmative action. "Parents are required to make diligent efforts toward the reasonably prompt assumption of full parental responsibilities." In the Interest of A.L.D., 797 A.2d 326 (Pa. Super. 2002). The Father has not made diligent efforts. The Court finds that CYS has met its burden and established §2511 (a) (1) that the Father's actions has caused the child to be without parental care and the conditions and causes will not be remedied.

In addition to establishing the grounds for termination in § (1) or (2) of §2511 (a), CYS must also establish that the child's needs and interests will be best served by termination of the Father's parental rights. In re: I.G., 939 A.2d 950, 2007 Pa. Super. 394. The Court must "give primary consideration to the developmental, physical, and emotional needs and welfare of the child." 23 Pa. C.S.A. §2511 (b). The Court must consider the intangibles of love, comfort, security and stability and must probe the nature of the parent-child bond and the effects of the severance of that bond. In re: C.M.S., II, 84 A.2d 1284, 2005 Pa. Super. 340. The child resides with her sister A.K. in a pre-adoptive home. While A.K. is not Father's biological child, he considers her to be his child as well and recognizes that the two girls should remain together. (T. T. pp. 43,56) The Mother's rights have already been terminated. (T.T. p. 6) The child desires to remain in her current placement. (T.T. p. 98) The child enjoys seeing her Father but that alone is not evidence of a bond. The child has referred to at least three people as Daddy; those persons are her Father and two other men who had relationships with the Mother. (T.T. pp. 17, 100) The child doesn't ask about her Father nor has she expressed, outside of the visits, any interest in him. The Pennsylvania Superior Court has held "the mere existence of an emotional bond does

7

not preclude the termination of parental rights." In the Interest of K.M., 53 A.3d 781, 791 (Pa. Super. 2012). The Court Appointed Special Advocate (CASA), Marilyn Montecalvo, opined that a bond exists between the Father and child but it is not a significant one. (T.T. p. 100) The CASA supported the termination of parental rights petition. (Exhibit 4) The child recognizes her Father and recognizes others as a Father, or as a father figure. She has had very limited contact with him throughout her life. The caseworker opined that there was no bond in existence between Father and child; the child merely enjoys a friendly relationship with him. (T.T. p. 17-18) Lastly and importantly, the Guardian Ad Litem supported the termination, informing the Court that the child has expressed a desire to remain in the current placement and that remaining there and being adopted is in her best interest. (Position of Guardian Ad Litem filed October 29, 2014) The Court found that the bond between Father and child is not a strong or meaningful one for the child and she will experience little or no negative or detrimental effects by severing the parental relationship.

In conclusion, the evidence established, by a clear and convincing standard, that the Father failed to perform parental duties for at least six months (§1), that the Father showed a repeated and continued incapacity or refusal which has caused the child to be without essential parental care, control, or subsistence necessary for her physical and mental well-being, and that those conditions and causes of the incapacity, abuse, neglect, or refusal cannot or will not be remedied by the Father (§2). The evidence also established by a clear and convincing standard that the best interests of the child would be served by this termination. Therefore, the Court granted the Petition for the Involuntary Termination of the Parental Rights of the Father, D.A. , to the child, P.J.

8

## IV.  CONCLUSION

The Court's Opinion and Final Decree of October 29, 2014 should be affirmed.

BY THE COURT:

KATHERINE B. EMERY, JUDGE

9